WILLIAM MILLER, Appellant, *v.* CHRISTINA MILLER et al., Respondents.

When an illegitimate child has, by the subsequent marriage of his parents, become legitimate by virtue of the laws of the State, or country, where such marriage took place, and the parents were domiciled, it is thereafter legitimate everywhere, and entitled to all the rights flowing from that status, including the right to inherit.

Plaintiff was born illegitimately in Wurtemburg, in 1845, where his parents then resided; they removed, with plaintiff, to the State of Pennsylvania, and his father there became a naturalized citizen. In 1853, while domiciled in said State, the parents were married. In 1857 a law was passed by the legislature of that State, legitimatizing children, born out of wedlock, of parents who shall thereafter marry, which act, by an act of 1858, was made applicable to all cases arising prior to 1857, save where some interest had become vested. In 1862 plaintiff removed, with his parents, to this State; his father thereafter became owner of certain real estate, and in 1875 died seized thereof, and intestate. In an action of ejectment *held,* that the provision of the Revised Statutes (1 R. S. 754, § 19) disinheriting illegitimate children did not apply ; and that plaintiff was entitled to inherit equally with the children of the deceased born in wedlock.

*Birtwhistle* v. *Vardill* (11 Eng. Com. Law, 266), *S. C.* (2 C. & F. 581 ; 7 id. 895), *Smith* v. *Derr's Admrs.* (34 Penn. St. 126), distinguished.

*Lingen* v. *Lingen* (45 Ala. 410), disapproved.

(Argued December 13, 1883; decided February 6, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 19, 1880, which affirmed a judgment in favor of defendants, entered upon the report of a referee.

This was an action of ejectment.

The material facts are stated in the opinion.

*Robert Stephens* for appellant. Plaintiff was made legitimate by the marriage of his parents in Pennsylvania in 1853. (Brightley's Purdon's Digest [ed. 1873], 1004, § 9.) Being thus legitimate, he did not cease to be so when he put his foot upon the soil of New York. (Blackstone, 4 Inst. 36.) The personal status of legitimacy given to the plaintiff, by the

laws of Pennsylvania, accompanied him wherever he went. (*Barrero* v. *Alpuente*, 6 La. [N. S.] 69; Story on Conflict of Laws, §§ 87a, note 3, 93, 93b, 93d, 93–107; Wheaton's Law of Nations, 172; Statute of Merton, 20 Hen. 3, chap. 9; 2 Cl. & Fin. 576, 589; 7 id. 915; Wharton's Conflict of Laws, § 241; Int. Law, IV, 363; 2 Parsons on Contracts, 800.) The principle that the status or condition of legitimacy must be determined by the law of the country where such status had its origin is well settled. (*Smith* v. *Kelly's Heirs*, 23 Miss. 170; *Scott* v. *Key*, 11 La. Ann. 232; *Ross* v. *Ross*, 129 Mass. 243; *Goodman's Trust*, Law Reports, Div., 1 Chancery, 1881 [part 7, July 1], Vol. 17, p. 266; *Van Voorhees* v. *Brintnall*, 86 N. Y. 18.)

. *John A. Reynolds* for respondents. The title and disposition of real estate are exclusively subject to the laws of the country where it is situated, which alone can prescribe the mode by which a title to it can pass. (18 Pick. 245, 247; 10 Wheat. 202; 3 McLean, 399; 46 N. Y. 144; 9 Wall. 27; *Brine* v. *H. F. Ins. Co.*, 6 N. Y. W'kly Dig. 568.) No person can acquire real estate whom the *lex rei sitæ* does not recognize for the purpose. (Wharton on Priv. Inter. Law, § 296; Story on Conflict of Laws, §§ 430, 434, 483, 484; *McCormick* v. *Sturdivant*, 10 Wheat. 202; *Fenton* v. *Livingstone*, 3 McQ. 497, 549; *Bonate* v. *Welch*, 24 N. Y. 157,164; *U. S.* v. *Fox*, N. Y. W'kly Dig., May 14, 1877, 335; *Miller* v. *Miller*, 18 Hun, 507.) Children and relatives who are illegitimate shall not be entitled to inherit from their fathers, etc., under any of the provisions of the Statute of Descent of this State. (2 R. S. [Banks' 6th ed.] 1135, § 19.) Our Revised Statutes continue the rule of the English common law, except when the same is expressly contravened thereby. (Constitution of N. Y., art. 1, § 17; 1 Kent [Holmes' ed.], § 342; 4 id., § 414 and notes; 2 C. & F. 593.) The fact of the plaintiff's birth out of lawful wedlock, arbitrarily and alone, determines his illegitimacy for the purpose of inheriting real estate in this State, independently of the facts where he was born, or the domicile of him-

self or father, at the time of his birth, and such illegitimacy can never be removed. (*Birtwhistle* v. *Vardill*, 7 C. & F. 895; Bingham on Descent, 472; *Fenton* v. *Livingstone*, 3 Macquean, 497, 549; *In re Dow's Estate*, 4 Drewry, 194–198; 1 R. S. 641; 2 Kent's Com. 208, 209; 1 Black. Com. 454, 455.) There is no distinction in law between an illegitimate child and a bastard. (2 Kent [Holmes' 12th ed.], 209; 1 Black. [Wend. ed.] 454; Wharton's Priv. Inter. Law, §§ 296–335; Story on Conflict of Laws, § 427, note 1, § 576; *Birtwhistle* v. *Vardill*, 7 C. & F. 895, 825, Bingham on Descent, 471; *Smith* v. *Derr's Adm'rs*, 34 Penn. St. 126; Savigny's Priv. Inter. Law, 33, 34, 264; 4 Kent [Holmes' ed.], 414 and notes; *Smith* v. *Kelly*, 33 Miss. 167; *People* v. *Baker*, 76 N. Y. 88; *Ross* v. *Ross*, 129 Mass. 243, 247, 249; *Goodman's Trust*, Law Rep. Div. 1, Ch., July, 1881, part 7, vol. 17, p. 266.)

MILLER, J.   By the statute of this State the real estate of an intestate passes in the first instance to his lineal descendants. (1 R. S. 751, §§ 1 and 2.)   It is also provided that "children and relatives who are illegitimate shall not be entitled to inherit." (1 R. S. 754, § 19.)   The plaintiff is a child of the deceased under whom he claims and one of his lineal descendants.   He was born in the kingdom of Wurtemburg in the year 1845, before the marriage of his parents, and the question to be determined is whether he was legitimate at the time of the death of his father.   At the time of his birth his father and mother were domiciled and resided at Wurtemburg.   A statute found in the Laws of 1610 of that kingdom at title 17, § 4, is as follows: "Whatever is decreed in the foregoing title regarding the inheritance of children born in lawful wedlock shall be applicable also to such children as are begotten of two persons unmarried (but not too closely related for their betrothal or lawful conjugal cohabitation) and who first became legitimate by a subsequent marriage of their parents, shall be held equal to those children who are born in lawful wedlock as regards the right of inheritance from its parents, brothers and sisters and other relatives as in all other respects."   Any

subsequent marriage of the parents of the plaintiff would, therefore, render him legitimate at the place of his birth and the domicile of himself and parents —Wurtemburg, and if the father had resided at Wurtemburg at the time of his decease, plaintiff would have been one of his lawful descendants, the same as though he had been born in wedlock.

The plaintiff with his parents subsequently removed to the State of Pennsylvania, and his father became a citizen of the United States by naturalization, and while domiciled there and in the year 1853 his parents were lawfully married. In 1862 the family removed to this State, where they lived until the death of the father in 1875. The real estate in question was purchased by plaintiff's father after his removal to this State and he owned the same in fee at the time of his death.

We think that by the law of the domicile of the plaintiff's birth, Wurtemburg, and by the subsequent marriage of his parents, the plaintiff was legitimated in the State of Pennsylvania. Be that as it may, however, in the year 1857 a law was passed by the legislature of the State of Pennsylvania which declared that : " In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of holy wedlock and cohabit, such child or children shall thereby become legitimated and enjoy all the rights and privileges as if they had been born during the wedlock of their parents." (See Brightley's Purdon's Digest [ed. 1873], 1004, § 9.) The above act was followed by an act passed in 1858, by which the provision cited was made applicable to all cases arising prior to 1857, unless some interest had become vested. As the real estate which is the subject of this controversy had not been acquired prior to the acts referred to, no vested interest existed which conflicted with the acts cited. It is very evident that the plaintiff after the passage of the above laws was a legitimate child and entitled to all the rights and privileges of a lineal descendant of his parents. If his father had died in the State of Pennsylvania seized of real estate it cannot be questioned that any doubt would arise in regard to his claim thereto. He was invested with all the

rights of a citizen entitled to inherit such portion of his father's estate as the law allowed to legitimate children. Occupying this position can it be said that the plaintiff lost such right because his father moved out of the State of Pennsylvania and located in the State of New York? Could he be legitimate in one State and illegitimate in another? Such a rule would render the right of inheritance, sanctioned by the law of the State where he resided, one of great uncertainty and fluctuation, and in many cases it would operate so as to produce great injustice. While the power of the legislature is paramount unless restricted by constitutional authority, it should not be upheld where its effect may be to produce great wrongs, unless imperatively demanded. Any other rule would leave the plaintiff, whose status was fixed by the laws of Pennsylvania, subject to the change of statutes in any State where he might have occasion to reside, whose laws differed from the former State. Assuming that the plaintiff by the laws of the State of Pennsylvania was legitimate, the question arises. whether that legitimacy was carried with him when his father and family removed to the State of New York. If the plaintiff labored under any disability in the State of New York it arose by reason of the provisions of law contained in the statutes of that State already cited. (1 R. S. 754, § 19.)

The law-making power can declare a child born to be legitimate or illegitimate, and it is only that power which fixes and determines the status of children born. If born before marriage the legislature can remove the disability of its illegitimacy, and by its transcendent power can legitimatize and make capable of inheriting the illegitimate child. (Blackstone, 4 Inst. 36.) If this had been done by an act of the legislature of the State of New York, no question could arise as to the legitimacy of the plaintiff or his right to inherit. The statutes of this State, to which we have referred, do not contain the words " born out of wedlock," or the word " bastard." The English statute of Merton, so-called (20 Hen. 3, chap. 9), not only required that a child, in order to inherit, should be legitimate, but also that " he should be born in lawful wedlock as well." This consti-

tutes a marked difference between that statute and the statute of this State cited *supra*. Legitimacy, which was conferred upon the plaintiff by the laws of Pennsylvania, to which reference has been had, constituted a portion of his rights and accompanied him wherever he might reside. Being legitimate in the State of Pennsylvania, he continued so in every State and in every country where he chose to establish his residence. The rule seems to be well settled that the law of the domicile of origin governs the state and condition of a person in whatever country he may remove to. The status of legitimacy which arises under the law of one nation is recognized by other nations according to the authorities. Story lays down the rule in his Conflict of Laws (§ 93), that "foreign jurists generally maintain that the question of legitimacy or illegitimacy is to be decided exclusively by the law of the domicile of origin." He also says at section 93b : "It seems admitted by foreign jurists, that as the validity of the marriage must depend upon the law of the country where it is celebrated, the status or condition of their offspring, as to legitimacy or illegitimacy, ought to depend on the same law, so that if by the law of the place of the marriage the offspring, although born before marriage, would be legitimate, they ought to be deemed legitimate in every other country for all purposes whatever, including heirship of immovable property." Wheaton, in his Law of Nations, at page 172, says: "Legitimacy or illegitimacy are among universal personal qualifications, and the laws of the State affecting all these personal qualities of its subjects travel with them wherever they go and attach to them in whatever country they may be resident." The general current of authority favors the doctrine that where an illegitimate child has been legitimated by the subsequent marriage of its parents according to the laws of the State or country where the marriage takes place and the parents are domiciled, such legitimacy follows the child wherever it may go. This rule is, as we have seen, fully sustained by the authorities to which we have referred. The learned Judge Story, in his " Conflict of Laws," devotes nearly the entire fourth chapter, and no inconsiderable portion

of the work, to the consideration of the question involved in
the case at bar, and he asserts the rule, that if a person is legiti-
mated in a country where domiciled, he is legitimate everywhere
and entitled to all the rights flowing from that status, including
the right to inherit.    He arrives at this conclusion after an
examination and exhaustive discussion of the subject and after
a comparison of the views of different writers upon civil law,
quoting extensively from the same.

In support of the same general doctrine which has been dis-
cussed are the following authorities: *Smith* v. *Kelly's Heirs*,
23 Miss. 170; *Scott* v. *Key*, 11 La. Ann. 232; *Ross* v.
*Ross*, 129 Mass. 243; *In re Goodman's Trust*, Law Reports,
17 Chancery Div. 266; *Van Voorhis* v. *Brintnall*, 86 N. Y.
18; 40 Am. Rep. 505.

The decision of this court might well rest upon the principle
asserted in the authorities already cited without regard to the
cases which are claimed to hold a contrary rule.    It is enough
to say that the right of inheritance under circumstances like
these here presented rests upon a principle which is founded
upon a rule of ancient origin, reasonable in itself and in accord-
ance with the well being of society and a due regard to the
right of persons, and that it is fully sustained by the weight of
authority.    The celebrated case of *Birtwhistle* v. *Vardill*, re-
ported in 11 Eng. C. L. 266, also in 2 Clark & Fin. 581, and
7 id. 895, and 9 Bligh, 7, involved a question of similar charac-
ter to that presented in the case at bar, and is specially relied
upon by the respondent's counsel.    It was there held that a
child born in Scotland, of unmarried parents domiciled in that
country, and who afterward intermarried there, is not by such
marriage rendered capable of inheriting lands in England.    By
the Scottish law the marriage legitimated the child.    It was
laid down by the chief baron on behalf of the court that the
comity existing between nations is conclusive to give the
claimant the character of the eldest legitimate son of his father
and to give him all the rights which are necessarily consequent
upon that character.    Thus sustaining the general doctrine that

by the comity between different nations the laws of one should be recognized by the other in reference to rendering children of parents born out of wedlock legitimate, but it further held that the son could not inherit in England, for the reason that although he was legitimate he was not born in wedlock. The distinction between being legitimate and being born in wedlock would seem to be a narrow one, and it is difficult to see how it can be urged that a person can be made legitimate although born a bastard, and yet for the purpose of inheriting real estate be illegitimate because not born in wedlock. The particular phraseology of the statute of Merton, so called, had much to do with this limited and narrow construction, and it is but fair to assume that if the term "born in wedlock" had been excluded the right of inheritance would have been maintained. It was said in that case by BAYLEY, J., that "the right to inherit land depends upon the quality of the land and not upon any personal statutes." It would thus seem that the case was decided upon the peculiar laws governing real estate in England and especially upon the statute of Merton. It was twice argued in the House of Lords (2 Clark & Fin. 581; 7 id. 895), and eventually decided upon the sole ground that although a child born in Scotland before the marriage of his parents would become legitimate by the subsequent marriage of said parents, yet he could not inherit in England, for the reason that the English statute does not only require that the child be legitimate, but that he must also be born in wedlock. This distinction was strongly criticised by Lord BROUGHAM, one of the ablest of English jurists, and one of the judges in that case when last heard. He says : "If what is laid down in this case be law the bounds of that law are very narrow; if it is the law anywhere it prevails assuredly *only* as the law within the bounds of Westminster Hall. I know, wherever I go in Europe it is boldly denied to be the law. I know the opinion of Dr. Story and other American jurists is against us, and I do not think I could overstate the degree in which all these jurists dissent from the judgment in this case." (See 7 Clark & Fin. 915.) Wharton in his Conflict of Laws (§ 241), says in regard

to this case, "the opinion was based on the special ground that the English law as to the descent of honors and real property was of a positive and distinctive character, and could not be invaded by the prescription of a foreign jurisprudence." Parsons in his work on Contracts in commenting on this case says : "We think such a marriage in Scotland, supposing parents and child afterward come to America and be naturalized here, would be held here to make the child an heir as well as give him all other rights of legitimacy."

The case of *Smith* v. *Derr's Adm'rs* (34 Penn. St. 126) arose under a statute of Pennsylvania similar to the statute of Merton, and was disposed of in a very brief opinion upon the authority of the case of *Birtwhistle* v. *Vardill (supra)*.

The case of *Lingen* v. *Lingen* (45 Ala. 410) is contrary to the general current of authority, and should not, we think, be followed.

When the State of Pennsylvania, by its legislature, declared that : "In any and every case when the father and mother of an illegitimate child or children shall enter into the bonds of holy wedlock and cohabit, such child or children shall thereby become legitimate and enjoy all the rights and privileges as if they had been born during the wedlock of their parents," it did not mean that persons who were born illegitimate would only be legitimate if born in lawful wedlock. Its intention was to legitimatize the offspring of those who were unmarried at the time of the birth of their child, and any other construction would lead to the making of provision for children lawfully born instead of those who were illegitimate. To hold a different rule would nullify the law and be contrary to the interpretation usually given to remedial statutes of the character of the one considered.

We do not deem it necessary to consider the question as to the definition of the word "legitimate;" whether it embraces "born out of wedlock" is in our opinion not material, as under the authorities we have cited, a child thus born may be made legitimate by law, and its legitimacy recognized in other countries besides the domicile of its parents, by the comity of

nations. We think we have fully established this proposition, and, although there are some authorities which hold differently, they are not sufficient to overturn the doctrine laid down in the elementary books and reported cases.

The case of *Birtwhistle* v. *Vardill* is so limited and restricted that it must be held only to apply to the law as established in Great Britain. We have examined the other authorities not specially referred to, which have been cited by the respondents' counsel, and we think none of them are in conflict with the rule we have laid down.

In our opinion the judgment of the General Term was erroneous, and should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.