(51 Misc. Rep. 309.)

### OLMSTED v. OLMSTED et al.

#### (Supreme Court, Special Term, New York County. July, 1906.)

DIVORCE—DECREE—CONCLUSIVENESS AND EFFECT.

　　A resident of the state abandoned his wife and married in New Jersey, where he had two children. He and his second wife and the children removed to Michigan. In an action for divorce against the wife whom he deserted, a summons was served by publication, and he obtained a decree by default, and subsequently he and the other woman went through a second marriage. Thereafter, in New York, the deserted wife obtained a decree of separation, and on a motion to sequestrate his property to secure alimony he was represented by attorney. *Held*, that the wife's decree of separation was an adjudication of the invalidity in New York of the foreign decree of divorce granted to the husband, and that, notwithstanding such decree, his marriage in New York was in full force and effect, so that the children by the second wife were not entitled to take under a will of the husband's father devising a share of his estate to the lawful issue of the son.

Action by Daniel H. Olmsted against Ellen A. Olmsted and others to construe a will. Decree rendered.

Charles H. Liscomb, for plaintiff.

Read G. Dilworth, for defendants Ellen A. Olmsted, Mary O. Decker, Clarence E. Olmsted, and Estelle, his wife.

Byers & Snyder, for defendants John H. Olmsted and Amelia, his wife, William H. Olmsted, and Grace, his wife.

Seth Bird, for defendant James Bird, as executor under the will of Silas Olmsted.

GREENBAUM, J. Under the will of Silas Olmsted, late of Tarrytown, Westchester county, N. Y., one-half of the real property of which he died seised and possessed in this state is devised to the "lawful issue" of his son Benjamin F. Olmsted, who died in July, 1905. The question to be determined is whether certain two of the defendants are the "lawful issue" of said Benjamin F. Olmsted. It appears that Benjamin F. Olmsted, being a resident of New York in 1850, married Mary Jane Olmsted, with whom he lived until June, 1870, when he

deserted and abandoned her and took up his abode in New Jersey. The plaintiff and three of the defendants were the only issue of his marriage. In 1874 Benjamin went through the form of a ceremonial marriage in New Jersey with one Sarah Louise Welchman, who lived with him as though his wife until her death in 1900. Two children (defendants in this action) were born to them in New Jersey. In 1881 Benjamin, Sarah, and their two children became permanently domiciled in Michigan. In 1882 Benjamin brought an action in the circuit court of Michigan against Mary Jane, his wife, upon the grounds of desertion and cruelty, the service being by publication, and upon her default a decree in favor of Benjamin, dissolving his marriage was obtained. Thereafter, on August 22, 1882, Benjamin and Sarah Louise went through a second ceremonial marriage in Michigan. At that time, by a statute then and still in force in Michigan, the children of parents born out of wedlock became legitimate when the parents intermarry. In June, 1883, Benjamin being a resident of Michigan, Mary Jane commenced an action in the Supreme Court in this state against him for separation. A judgment roll filed in the separation suit shows that Benjamin was represented by his attorney in a motion for the sequestration of his property to secure the payment of alimony, and on the 22d day of January, 1885, judgment was entered separating from bed and board Mary Jane and Benjamin F., and requiring him to pay certain moneys by way of alimony and counsel fees. Upon an appeal by Benjamin F. to the then General Term of the court from the order entered in the separation action, the order was affirmed.

There are certain legal propositions applicable to the questions under discussion which may, up to the present writing, be deemed settled in this state and in the federal courts. The Michigan decree was and is entitled to no recognition in this state. Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. Besides, the decree in separation in this state between Benjamin and Mary Jane is an adjudication of the invalidity in this state of the Michigan judgment. It may also be assumed to be the law that the state of Michigan could and can lawfully give effect within its own territory to the decree of divorce rendered in its court in favor of Benjamin. Haddock v. Haddock, supra; Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654. If, then, the Michigan decree is at least valid in Michigan, the subsequent marriage of Benjamin and Sarah Louise was also valid in that state, and it must follow that under the statutes of the state to which reference has already been made the children of Benjamin and Sarah Louise born before the marriage became legitimized in Michigan after the marriage there of their parents. Another general proposition of law which has been recognized in this state is that the status of offspring as to legitimacy or illegitimacy depends upon the law of the place of the marriage of the parents.

In the language of Story in his Conflict of Laws (section 93):

"If by the law of the place of the marriage the offspring, although born before marriage, would be legitimate, they ought to be deemed legitimate in every other county for all purposes whatever, including heirship of immovable property."

The Court of Appeals, in Miller v. Miller, 91 N. Y. 320, 321, 43 Am. Rep. 669, has expressly referred to and recognized the correctness of this doctrine. We are thus confronted with apparently irreconcilable legal principles in passing upon the question before us. Issue can be lawful only when they are the offspring of persons lawfully married, whether the marriage be consummated before or after the birth of the issue. Within the state of Michigan the marriage of Benjamin and Sarah Louise is deemed lawful, and hence their issue under the laws of that state, whether born before or after the marriage of their parents in Michigan, are deemed legitimate; that is, lawful. Under the law of this state a person legitimized in the place of his domicile is legitimate everywhere, "and entitled to all the rights flowing from the status, including the right to inherit." Miller v. Miller, 91 N. Y. 321, 43 Am. Rep. 669. But the law of this state not only regards the Michigan marriage of Benjamin absolutely void, but by a solemn decree made in a cause pending between him and his wife, Mary Jane, the courts of this state have judicially declared that his New York marriage with Mary Jane was in full force and effect, notwithstanding the Michigan decree of divorce, a determination recently recognized as sound by the United States Supreme Court in the Haddock Case.

As the legitimacy of the said two defendants in this case depends upon the lawfulness of the marriage of their parents, and as this court has expressly declared that the parents had never been lawfully married, can this court now stultify itself and its decrees by recognizing the legitimacy of children who are the offspring of an illicit relationship? An examination of the case of Miller v. Miller and the authorities upon which it relies will show that the question of the status of one legitimized by the law of his domicile was considered with reference to a state of facts, which presented no conflict with any decree of a court of this state affecting the persons concerned or their parents. The test of legitimacy enunciated by the courts of this state and in some other jurisdictions would appear to be, generally speaking, a wise and just one. But it is not one that is absolute and unyielding in its application. A sound public policy dictates that the courts of this state shall ordinarily recognize the status of one whose legitimacy has been fixed. But where such recognition necessarily involves the recognition of the validity of the marriage of the parents of the person concerned, which our courts have expressly considered and refused to recognize, then it would seem that a conflict between the two jurisdictions is reconcilable only by a higher public policy which demands obedience and respect to laws and mandates of our jurisdiction, and requires us to uphold and enforce our own decrees. In Miller v. Miller, 91 N. Y. 319, 43 Am. Rep. 669, the court, in discussing the injustice that might be produced in not observing the status of a child elsewhere legitimized, says:

"While the power of the legislature is paramount unless restricted by constitutional authority, it should not be upheld where its effect may be to produce great wrongs, unless imperatively demanded."

Story, in his Conflict of Laws (8th Ed.), at section 106 of chapter
4, which is largely devoted to a discussion of the question now con-
sidered, and relied on in the Miller Case, supra, says:

> "No nation being under any obligation to yield up its own laws in re-
> gard to its own subjects to the laws of another nation, it will not suffer its
> own subjects to evade the operation of its own fundamental policy or laws,
> or to commit frauds in violation of them by any acts or contracts made
> with that design in a foreign country, as it will judge for itself how far
> it will adopt and how far it will reject any such acts or contracts. * * *
> Hence, too, a person born before wedlock, who, in the country of his birth,
> is deemed illegitimate, may not, by a subsequent marriage of his parents
> in another country by whose laws such a marriage would make him legit-
> imate, cease to be illegitimate in the country of his birth. * * * In
> short, every nation in these and like cases will govern itself by such rules
> and principles as are best adapted in its own judgment to subserve its
> own substantial interests and fixed policy and uphold its own institutions."

It seems to me that the situation here disclosed is one that "im-
peratively demands" that our courts refuse to recognize the status
of children acquired in defiance of the laws of our state and the decrees
of our tribunals. I am not unmindful of the opinion written in Mat-
ter of Hall, 61 App. Div. 266, 278, 70 N. Y. Supp. 406, in which, in
discussing the question of the legitimacy of an individual, it is in effect
stated that the status of the parents was not involved in considering
that of their son, and that:

> "Can there be any ground of public policy which would preclude one
> recognizing the legitimacy of this child in Dakota? * * * But, more
> than that, to whatever extent public policy may lead the courts of this
> state to question in this state the relations of Alice Maude to Richmond
> Kingman, the father of the infant, that public policy has never led the
> courts of our own state to a denial of the status of legitimacy to the issue
> of that marriage when legitimate where born. In this the humanity of
> our law which will protect the innocent from the wrongs of others out-
> weighs any possible claim of public policy to the contrary, and for the
> protection of this child the court should not hesitate to apply the general
> rule that his legitimacy in Dakota determines his legitimacy here."

It may be observed that in the Hall Case the remarks above quoted
are obiter dicta, as it appears that the court held that the first alleged
marriage of the mother, Alice Maude, was not a legal marriage, and
hence the second marriage, which was the one attacked, was valid.
Moreover, in that case there was no previous decree in this state af-
fecting any of the parties or their parents. As I am, therefore, not
obliged to follow the views expressed as above set forth by the learned
court in the Hall Case, I deem it pertinent to observe that I cannot
acquiesce in the opinion that the status of the child may be considered
independently and separately from that of the parents. The relation-
ship of parents and child, so far as the question of the legitimacy
of the child is concerned, is so indissolubly bound up that it seems to
me the marital status of the parents inevitably must determine the
legitimacy of their offspring. The humanity of the laws of most
civilized communities recognizes the propriety of legitimizing offspring
born out of wedlock when the parents have married, but I have not
learned of any law of any modern civilized nation which legitimizes
children of unmarried parents, nor can I approve of the remarks of the

learned court in the Hall Case that the "humanity of our law which will protect the innocent from the wrongs of others outweighs any public policy to the contrary," so far as they apply to the question of the legitimacy of offspring. If our humanity "will protect the innocent from the wrongs of others," why are not all bastards deemed legitimate? Upon that doctrine the marriage of a married man to a woman who innocently believed him to be unmarried should be upheld as lawful. If such reasoning be sound, then would the question of illegitimacy cease to vex the courts. If the marriage institution is to be upheld in its integrity in obedience to the law and policy of this state, the unfortunate consequences of innocent offspring cannot be avoided. My opinion is that the children of Benjamin F. Olmsted and Sarah Louise Welchman. are not his "lawful issue." A decree accordingly will follow.

Decreed accordingly.