LAND, J.
This is a suit for a partition of a certain lot of ground in the city of New Orleans, which formerly belonged to one Adelard Duvigneaud, who died in the year 1873, leaving a last will and testament which was duly probated in May, 1873. The testator gave and bequeathed to his wife, Marie Philomene Bechet, one-third of his estate in full property and the usufruct of the remainder during her natural life. The wife, as executrix, administered the succession, and in May, 1874, was by decree of court recognized as legatee and usufructuary, and as such put in possession of the lot of ground in question, described in the inventory as the late residence of the deceased and appraised at $1,000.
In his will the testator declared that he had seven children; three born from his second wife, Anne Marie Andre, and four from his third wife, who survived him. The testator set forth the name and date of birth of each child, and the testament concludes as follows:
“All my children above named were bom before my marriage with their mother, but were recognized by me in the acts of baptism before my marriage with their respective mothers. I hope that my children will respect my will.”
The testator did not leave any part of his estate to his children', or any of them.
The widow subsequently married one Joseph Folck, and died in the year 1910, leaving a son, Armand Folck, as the sole issue of her second marriage.
The plaintiff, Raoul Duvigneaud, is the sole survivor of the issue of Adelard Duvigneaud and Anne Marie Andre.
The defendants are the surviving children and grandchildren of Adelard Duvigneaud and Marie Philomene Bechet, and Armand Folck, the issue of her last marriage, as above stated.
Mrs. Mina Duvigneaud, widow of Armand Loquet, and Mrs. Wilhelmina Duvigneaud, wife of Edmund Epps, for answer denied that the plaintiff ever had any interest in the property described in the petition, denied that his father and mother were ever lawfully married, and averred that, if any pretended marriage ceremony was performed, his mother was in articulo mortis, incapable of giving consent, and no marriage was ever performed; and that at the time of plaintiff’s conception his father was a man of color, of mixed blood, and his mother was a white woman, and the marriage of such persons was prohibited by law; and plaintiff is therefore a bastard incapable of inheriting.
The three grandchildren for answer to the petition of the plaintiff asked for strict proof and submitted the case to the court on the merits.
Mrs. Egilda Duvigneaud, widow of Edward W. Von Buelow, for answer pleaded the general issue and averred that the title of Adelard Duvigneaud in said property was divested by a tax sale to Joseph P. Folck, second husband of Marie P. Bechet, widow of the said Duvigneaud, and by reason of *571 said tax purchase fell into the community existing between said Folds and his wifé; and in the alternative that said property belonged to the community formerly existing between Adelard Duvigneaud and Marie P. Bechet.
Armand Folek does not appear to have filed an answer in the case, which as to him was tried on a default.
The cause was tried on the merits, and there was judgment recognizing plaintiff and the defendants, except Armand Folek, as the heirs of Adelard Duvigneaud, and recognizing all the defendants as the heirs of Marie Philomene Bechet, and ordering the sale of the property, etc.
From this judgment, Mrs. Buelow, Mrs. Loquet, and Mr. Folek have appealed.
[3] As to the color of Adelard Duvigneaud, the evidence preponderates in favor of the conclusion that he was of the white race. The plaintiff, born in 1847, testified that his father was a white man, and that his father’s brother and sisters were white people. The brother was for several years judge of the Second district court of the city of New Orleans. A former clerk of that court, who had occasion frequently to meet Adelard Duvigneaud, who was one of the appraisers of the same tribunal, testified that, although of a dark color, Adelard had the hair and appearance of a white man, and was so considered. Another witness, at whose father’s house Adelard and his brother, the judge, were received as visitors for a number of years, testified that Adelard was known as a white man. Adelard’s second wife was a white woman, and he had three children by her between the years 1840 and 1848, and finally married her in 1853. After her death, Adelard consorted with and married Marie P. Bechet, a colored woman, and this connection naturally led to his association with colored people.
It is conceded that Adelard’s father was a white man, but the defendants have sought to prove that Adelard’s mother was a colored woman by the testimony of three of the defendants, who. say that they derived their information from their mother. Only one of these witnesses testified, and it was admitted that the two others would corroborate her statements. We make the following excerpts from the witness’ testimony:
“Q. Who was Adelard Duvigneaud’s brother?
“A. A. Louis Lechenel Duvigneaud.
“Q. What was he?
“A. In the city of New Orleans, he was a judge. * * *
“Q. Didn’t you know the judge to be a white man?
“A. Yes, sir.
“Q. Did your father tell you that the judge was bis brother?
“A. Yes, sir. Sure he was his brother.
“Q. Did your father ever tell you he was a colored man?
“A. My father never told it to me, but he told it to my mother, and my father had the privilege of a white man.
“Q. Did you ever hear him tell that to your mother?
“A. No; I didn’t hear him tell it to my mother, but my mother told it to me.”
Such testimony from interested sources is too vague, indefinite, and contradictory to outweigh the positive and direct evidence tending to show that plaintiff’s father was a white man. The only disinterested witness adduced in behalf of the defendant said:
“I don’t know whether he was a white man or a colored man, but he always associated with colored people. We would consider a man living that way — that is, as man and wife — with a colored woman, that they were both of the same race.”
In answer to a direct question whether he knew that Adelard Duvigneaud was a white or colored man, the witness replied:
“No, I don’t know; that is hard to tell; he is white and he is colored.”
Such testimony proves nothing as to the race to which Adelard Duvigneaud belonged.
[1] A copy from a church register, filed in evidence, shows that on June 1, 1853, a Catholic priest, by virtue of a license, and *573 with “the mutual, free, and verbal consent” of “Sieur A. Duvigneaud” and “dame A. M. Andre,” celebrated the marriage of said parties, in the presence of four witnesses. The register of the marriage was signed by the priest and by A. Duvigneaud, but not by A. M. Andre. Her failure to sign the church register may have been due to the illness referred to in the answer. However this may be, such failure was a mere informality in the confection of the procSs verbal of marriage. The celebration of the marriage with the consent of both parties was attested by Adelard Duvigneaud over his own signature, and that attestation binds him and his ayant cause.
Moreover, Duvigneaud in his last will and testament recognized the status of A. M. Andre as his second wife. Lastly, a marriage celebrated without the free consent of both parties can only be annulled upon application of both parties, or of that one of them whose consent was not free. Civil Code, art. 110.
[2] The answer admits that the plaintiff was the child of Adelard Duvigneaud and Anne Marie Andre, and hence there is no issue of paternal filiation raised by the pleadings. There is no evidence of the formal acknowledgment of the children of the second and third marriages by Adelard Duvigneaud outside of the declarations of his last will and testament in which the testator acknowledged the paternity of all of said children, and declared that they had been recognized by him in acts of baptism before said marriages. Under the Civil Code of 1825, an acknowledgment in the act of baptism of a child followed by a subsequent marriage of the parents legitimated such offspring. Hart, Tutrix, v. Hoss & Elder, Administrators, 26 La. Ann. 90. It was the evident purpose of the testator to recognize the seven children named in the will as legitimate and entitled to inherit the residue of his estate. Defendants in assailing the status of the plaintiff, under the will, as a legitimate child, impeach their own legitimacy in so far as it is dependent on the recitals of the same instrument. In Succession of Monette, 26 La. Ann. 26, it was held that the plaintiff could not attack an act of acknowledgment which established his own legitimacy and also the legitimacy of the defendant.
The recitals of the will are tantamount to a declaration by the testator that the children named had been duly legitimated, and constitute prima facie proof of their legitimacy. See Gaines v. Hennen, 24 How. 553, 16 L. Ed. 770; Gaines v. New Orleans; 6 Wall. 642, 18 L. Ed. 950.
Defendants offered in evidence an act of sale of date May 14, 1886, from Joseph Eolek to his wife, Marie Philomene Folck, of his interest, title, claim, and demand resulting from his purchase of the lot of ground in question on May 25, 1886, at a sale made by the state tax collector, as per confirmatory act of sale passed on May 31, 1886, before a certain notary; said sale being by the state of Louisiana (L. G. A. Duvigneaud to Jos. Eolek). The confirmatory act was not offered in evidence, and there is nothing in the record to show any such tax sale. We cannot understand how Eolek on May 14, 1886, conveyed property which he did not purchase until May 25, 1886.
The sale by Eolek to his wife was prohibited by law; and there is no evidence that he ever purchased the property at tax sale beyond the recitals in the act of sale to his wife which do not bind third persons.
In February, 1885, the property was adjudicated to the state for the unpaid taxes of 1880, 1881, and 1883, was subsequently advertised and reoffered for sale, and failed to sell, and in June, 1894, was sold by the Auditor of the state to Mrs. Marie P. Eolek for the sum total of the taxes, penalties, and costs due on the property. All of these *575 facts appear from the Auditor’s deed and are utterly inconsistent with the theory of a tax sale to Folds in May, 1886.
[4] Mrs. Folds was in possession of the property as usufructuary and joint owner under the decree of the court and was bound in law for the taxes. Her purchase from the state was, as to the heirs at law, a mere payment of the taxes. Bossier v. Herwig, 112 La. 539, 36 South. 557.
Judgment affirmed.