**GONZALEZ et al. v. HOBBY, Federal Security Administrator.**

**Civ. No. 6913.**

United States District Court
D. Puerto Rico, San Juan Division.

March 31, 1953.

Frank Torres, Ponce, Puerto Rico, for plaintiffs.

Harley A. Miller, U. S. Atty., and Pascual Amado Rivera, Asst. U. S. Atty., San Juan, Puerto Rico, for defendant.

RUIZ–NAZARIO, District Judge.

As the Court stated in its order of October 24, 1952, in this case, the Administrator, in his decision subject of review herein, concluded that plaintiffs' status as legitimate or illegitimate children had to be ascertained as provided for in Section 216(h) (1) of the Act, Title 42 U.S.C.A. § 416(h) (1) and that, inasmuch as the insured individual at the date of his death, was domiciled in Puerto Rico and that, as of said date, Puerto Rico did not figure in the term "State", as defined in Section 210 (h) of the Act, Title 42 U.S.C.A. § 410(h), plaintiffs' rights under the Act had to be determined by applying such law as would be applied in determining the *devolution of intestate personal property* by the courts of the District of Columbia. He also concluded that under the laws of the District of Columbia only legitimate or legitimated children may inherit the intestate personal property of their father and that, to determine whether the children are so legitimate, the courts of the District of Columbia would look to the law of the place where the father was domiciled at the time of the childbirth, and would look, therefore, to the *laws of Puerto Rico,* to determine *such* legitimacy.

The Administrator further concluded, that plaintiffs were illegitimate issue because "under the law of Puerto Rico, children born out of wedlock are illegitimate" (Rec. p. 9).

Plaintiffs claim error in the Administrator's conclusion that they are not entitled to the benefits of the Act within the purpose and intent thereof, and this is the proposition at issue, under the cross-requests for Summary Judgment filed by the parties.

The three minors, here, were born after the enactment of Act No. 229 of the Legislative Assembly of Puerto Rico, approved May 12, 1942, amending Section 112 of the Civil Code of the now Commonwealth of Puerto Rico.

Under this enactment the minors here, though born out of wedlock from parents who could not have intermarried at the time of their conception, were statutorily labelled "natural" children because their birth took place after the effective date of said statute.

The record shows that said minors were duly acknowledged or recognized by the insured individual as his natural children (R. p. 19 Exh. C).

It is the law of the Commonwealth of Puerto Rico, as it was at the time of their father's death, see Section 767 of the Civil Code of Puerto Rico, as amended by Act No. 13 of March 29, 1945 and as further amended by Act No. 255 of May 10, 1949, of the Legislative Assembly of Puerto Rico; and Section 736 of said Code, as amended by Act No. 447, of the Legislature of Puerto Rico, approved May 14, 1947, that acknowledged or recognized natural children are forced heirs of the parent who has recognized them as his children and that each acknowledged or recognized natural child is entitled to share in the devolution of the intestate personal property of said parent in like terms and proportion as legitimate children of said parent.

Defendant, in his brief, so concedes.

Devolution of intestate personal property of the deceased in favor of forced heirs is compulsory under the laws of the Commonwealth of Puerto Rico, and said forced heirs even in cases of devolution of testate personal property cannot be deprived of their legal share by the testator, who can only transfer one third of his estate to those who are not forced heirs.

The minors, here, were adjudged to be the sole and universal heirs of said insured individual, Ernesto Gonzalez, as his recog-

nized (acknowledged) natural children, under a Probate Decree entered on April 24, 1951 by the District Tribunal° for Puerto Rico, Guayama Section, in Civil Case No. R–3,770, entitled Virginia Malave, Petitioner, Ex Parte. (Rec. p. 19, Ex. C.)

Thus, said minors, with respect to the devolution of the intestate personal property of their deceased father had, under said laws of the Commonwealth of Puerto Rico, identical status to that enjoyed by legitimate children.·

It would be, therefore, most inappropriate to conclude that the courts of the District of Columbia, in looking to the laws of the Commonwealth of Puerto Rico to ascertain whether said minors are illegitimate or legitimate within the purview and intent of the Act, for the application to them of the laws of the District in the matter of determining the devolution of intestate personal property of the deceased insured individual, could lawfully inject the District Laws' concept of such terms and flagrantly ignore Puerto Rico's statutory concept thereof which is clearly at odds with theirs.

Under the laws of the Commonwealth of Puerto Rico these minors since their birth have enjoyed the right (a) to use their father's family name, (b) to receive support and maintenance from him, and (c) as of the time of their father's death, to inherit his estate in identical terms and proportion as the legitimate children of other jurisdictions.

It is hard to conceive that Congress, in enacting the Act, would have intended to set standards based on other than practical considerations of actual social justice and fair treatment to those whom it sought to protect.

■ It is the Court's opinion that those provisions of the Act, here in question, were liberally intended by Congress to protect those children lawfully called upon under the laws of the state or other political division, in which the insured individual is domiciled at the time of his death, to share in the devolution of his intestate personal property, whatever label or denomination be given to their parental relation, or at least that the rights of these under the Act are

to be fully recognized, when, under said law of their father's domicile, they enjoy a status which, though not *labelled* "legitimate", accords them rights in no way inferior but in every sense identical to the rights enjoyed by those so labelled and who, in addition, would meet all the other requirements as to dependency, etc., imposed by the Act, the compliance whereof is not here contested.

■ The Act was liberally designed to protect both the insured individual and, in the event of his death, those who because of having "the *same status relative to taking intestate personal property* as a wife, husband, widow, widower, *child,* or parent" according to the laws of his place of domicile "shall be deemed such." See last sentence, Section 216(h)(1) of the Act, Title 42 U.S.C.A. § 416(h)(1).

In construing said Section 216(h)(1) of the Act, Title 42 U.S.C.A. § 416(h)(1), in regard to the provision thereof which directs the Administrator to apply such law as would be applied by the courts of the District of Columbia in determining the devolution of intestate personal property, whenever the insured individual is or was not so domiciled in any State, · due consideration must be given to the provisions of Section 205(g) of the Act, Title 42 U.S.C.A. § 405(g), establishing the procedure for the review of the final decisions of the Administrator by means of a civil action which must be brought in the United States. District Court for the district in which the plaintiff resides or has his principal place of business, unless said plaintiff *does not reside* or have his principal place of business *within any such judicial district,* in which event the action must be brought in the United States District Court for the *District of Columbia.*

■ No doubt, the language "if he does not reside or have his principal place of business within any such judicial district" used in said Section, was intended to apply to plaintiffs who resided in places outside the 48 States or not included in the definition of the term "state" contained in Section 210(h) of the Act, Title 42 U.S.C.A. § 410(h), inasmuch as places located within the states proper or within the territorial

subdivisions included in said definition would, of necessity, belong to one or other of the Federal Judicial districts established by law.

Thus, because such nonresident plaintiffs had no district court of their own to which they could resort, they were remitted to the United States District Court for the District of Columbia, but this was merely to give them a federal forum in which to obtain review, but not with the purpose of subjecting them to the substantive law of the District dealing with the subject.

Therefore the Court is of the opinion that this evident intent of Section 205(g), 42 U.S.C.A. § 405(g), must be read into Section 216(h)(1), 42 U.S.C.A. § 416 (h)(1), in the sense that the controlling factor to be applied by the Administrator in determining the devolution of the intestate personal property of the insured individual shall, at all times, be the substantive law of the place where he resided or was domiciled, and *not*, as defendant appears to have concluded, the substantive law of the District of Columbia, be it a case subject to review by the United States District Court of the District of Columbia, because of defendant's residence or place of business not being within any judicial district, or be it a case subject to review by the United States District Court of a place which, though not originally included in the Act's definition of the term "state" has, subsequently to the insured individual's demise, come to be included within said definition, as it happens in this case.

We can not attribute to Congress a purpose to discriminate between individuals equally entitled to the benefits of the Act by giving to the ones the right to have their dependency status determined under the substantive laws relative to the devolution of intestate personal property of the place where the insured individual was domiciled at the time of his death, while denying this right to others and remitting these to the substantive laws of the District of Columbia in the matter.

The cases cited by defendant do not support his thesis and rather demonstrate that plaintiff's position here is sound. None of them involved children who, under the laws of their father's domicile, as in force at the time of his death, might have enjoyed such rights relating to the devolution of intestate personal property, as those enjoyed by the minors in this case. All said cases dealt with situations in which the insured individual had merely recognized the children as his children, had supported them and aided in their rearing and training, and in which it was claimed that, because of this alone, the children, though concededly not entitled to inherit from the putative father or to succeed to the devolution of his intestate personal property under the laws of the state of his domicile, qualified under the Act. The Courts denied their claims precisely because the applicants failed to meet the above test. Defendant cannot deny that claimants here fully meet said test.

Other cases cited by defendant in his original memorandum in support of his counter-motion for summary judgment equally fail to support his position and rather either demonstrate or imply the soundness of plaintiff's thesis in this case. Some of them fall within the class above distinguished and the others involve situations in which, under the laws of the insured individual's domicile, devolution of his intestate personal property to a child born out of wedlock, but subject to legitimation by the subsequent marriage of his parents, could not take place unless there was an actual legitimation. The applicants' parents, there, never did marry and, therefore, they were never legitimated and never came to enjoy any right to inherit.

The herein plaintiffs' right to inherit from their father and to the devolution of his intestate personal property does not, in any way, depend upon their legitimation by the subsequent marriage of their parents and is in no way conditioned thereon. Under the laws of the Commonwealth of Puerto Rico they enjoy said rights since their recognition by their father, as his natural children, in their birth certificates, which is one of the legal modes or forms of recognition provided by said laws, see Section 125, Civil Code of Puerto Rico, 1930

Ed., and by virtue of the other statutory provisions cited supra.

Moreover, Section 202(d)(3) of the Act, 42 U.S.C.A. § 402(d)(3), determines that a child shall be deemed dependent upon his father at the time of his death *unless,* at such time, such individual *was not living* with or *contributing* to the support of such child *and*—

(A) such child is neither the legitimate nor adopted child of such individual, *or*

(B) such child had been adopted by some other individual, *or*

(C) such child was living with and was receiving more than one-half of his support from his stepfather.

Under said provisions, therefore, a child cannot be excluded or deprived from dependency benefits, *unless* any one of the exclusory conditions (A), (B) or (C) *co-exists* with the exclusory condition that the individual was not living with or contributing to the support of such child. It must be noticed that this exclusory condition is followed by the conjunction "and", which in turn immediately precedes the other exclusionary clauses listed as (A), (B), (C).

■ Thus, the child cannot be excluded from dependency benefits when the insured individual, at the time of his death, was living with and totally supporting such child, even if (A) the child was not the legitimate or adopted child of such individual, or (B) had been adopted by some other individual.

■ The child can *only* be excluded from dependency benefits when:

(1) The insured individual at the time of his death was not living with him, or contributing to his support *and* (A) such child is neither the legitimate nor adopted child of such individual,

(2) The insured individual at the time of his death was not living with him or contributing to his support *and* (B) such child had been adopted by some other individual,

(3) The insured individual at the time of his death was not living with him *but* was contributing to his support, *and* (C) such child was living with and was receiving more than one half of his support from his stepfather.

The record here shows (R. pp. 13–18, Exhibits A and B) that the insured individual, at the time of his death, was both living with his three minor children and supporting them in full, and, thus, said exclusory conditions appear not to be applicable to their situation, and they must be deemed dependents of the deceased individual, irrespective of whatever construction were given to the Act in the aspect of "legitimacy", hereinbefore discussed.

■ It follows, therefore, that defendant was in error in his conclusion that, under the purview and intent of the Act, plaintiffs are not entitled to the child dependency benefits thereunder, and there being no genuine issue as to the material fact that plaintiff-claimant Virginia Malave is entitled to child's benefits on behalf of Ernesto, Pascasio and Jose Manuel Gonzalez Malave, based on the wage record of their father, the insured individual, Ernesto Gonzalez, said plaintiff-claimant is entitled to a judgment as a matter of law reversing and setting aside defendant's decision under review here.