IN THE MATTER OF THE ESTATE
OF ALBERTO SPANO, DECEASED.

SANTO SPANO, CLAIMANT-APPELLANT, v. VINCENT J.
COMMISA, ADMINISTRATOR OF THE ESTATE OF AL-
BERTO SPANO, DECEASED, DEFENDANT - RESPON-
DENT.

Argued January 23, 1967—Decided May 8, 1967.

*Mr. Robert J. Carluccio* argued the cause for claimant-appellant (*Mr. Russel E. Greco,* attorney).

*Mr. Ferdinand J. Biunno* argued the cause for defendant-respondent.

*Mr. William J. Walsh,* Deputy Attorney General of New Jersey, argued the cause for respondent State of New Jersey (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Louis Sherman* appeared on behalf of Giuseppe Spano, Pietro Spano, Nicolena Spano Mararesi, allegedly the cousins of the decedent (*Messrs. Raff, Sherman & Scheider,* attorneys).

The opinion of the court was delivered by

SCHETTINO, J. The question in this case is whether a child acknowledged by his natural father under Italian law is entitled to inherit his father's estate in New Jersey.

The father, Alberto Spano, died intestate and a resident of Newark, New Jersey, owning property there.

He was born in Italy. During the period of 1907 to 1915 he cohabited with Leonarda Todaro in the town of Calatafimi, Province of Trapani, Italy. No ceremony of marriage was ever performed. On January 25, 1907 a child, Santo Rosetti, was born to them. Alberto supported Santo from the date of his birth until he reached majority, and even after migrating to Newark in 1915. For a period of three years during the late 20's, Santo served in the Italian Army under the name of Santo Spano.

On December 11, 1937, in Newark, Alberto Spano executed a document which he filed in Italy, in compliance with Italian law, acknowledging Santo as his natural child. As one of the results of the acknowledgment, the birth record of Santo, in the registry of Calatafimi, was changed to note the fact that Santo Rosetti was henceforth to be known as Santo Spano. A similar document was executed by Leonarda Todaro in 1957, and once again the birth certificate was amended.

In 1938 Alberto referred to Santo as his son, and executed an affidavit of support in order to facilitate Santo's coming to the United States. A visa was issued by the Italian government to Santo Spano. Santo arrived in the United States in 1940. He became a United States citizen in 1948, and resided with Alberto in Newark until Alberto's death on November 29, 1956. During this entire period Alberto introduced Santo to his friends and acquaintances as his son.

As stated above, Alberto died intestate, leaving no spouse and no child other than Santo. He had married twice but both wives had predeceased him. An administrator of Alberto's estate was appointed by the court.

In April 1962 Santo moved before the Essex County Court, Probate Division, for an order discharging the administrator on the grounds that he was inadvertently and improperly appointed administrator as Santo was the true and only heir of Alberto. The trial court ruled that Santo was not the heir or next of kin of Alberto and ordered Santo to account to the administrator for the rental income on the realty owned by Alberto on the date of his death. The trial court ruled that the status of an acknowledged natural child does not confer upon Santo the rights of a legitimate child. It could find no authority for the proposition that the status of an acknowledged natural child, created by a foreign country, the residence of the child, should give rise to rights of inheritance under the law of decedent's domicile (here, New Jersey) to a person claiming to be the recognized natural child.

In August 1962 Santo moved, under R. R. 4:62–2, to vacate the order. As a result of a hearing on the motion, the trial court entered an order reciting that further testimony and proof were required. The hearing was finally held in December 1963. In January 1964 the court entered an order denying the motion to vacate. The court, once again, found that whatever status Santo achieved under Italian law, he did not achieve a status of legitimization under the laws of New Jersey and, thus, he was not entitled to inherit Alberto's estate.

On February 5, 1964 Santo appealed to the Appellate Division, where he offered affidavits of experts in Italian law as to the rights of an acknowledged natural child to inherit from his father's estate. The Appellate Division affirmed the trial court's determination because the proofs were inadequate to establish that Santo had been legitimatized by the procedures taken by Alberto.

Although certain persons believe they are the surviving next of kin, i. e., cousins of the decedent, they have failed to produce any evidence of their relationship to the decedent. Nevertheless, they have participated in these proceedings.

Their attorneys appeared at this argument, so they are bound by our determination.

The State of New Jersey, to which the decedent's estate will escheat if it is found that the decedent died without heirs, next of kin, or surviving spouse, has filed a statement in lieu of brief, *R. R.* 1:7–4(b), *R. R.* 2:7–1, in which the State joined with the brief of the administrator. Some procedural difficulties have been raised. Where a contest exists between the State (here, the State seeking an escheat) and one of its citizens (here, decedent's relatives seeking inheritance), justice requires that the merits of the dispute be resolved.

## I

Santo argues that whether a particular child has acquired the requisite status of legitimacy to bring him within the class of persons permitted to inherit in New Jersey, is a question not of descent and distribution but of status. Such status is to be determined by the law of the residence of the child at the time and the place of acknowledgment, and not by the law of the situs of the land.

The administrator contends that Santo is not the legitimated child of decedent Alberto Spano within the meaning of *N. J. S.* 3A:4–7, which provides:

"For the purpose of descent and distribution under this chapter to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit and take from his mother and from his maternal kindred, including his maternal ancestors, descendants and collaterals; and they, from him and his issue. When parents of an illegitimate child shall marry subsequent to his birth and recognize and treat him as their child, such child shall be deemed to have been made the legitimate child of both of his parents for the purpose of descent and distribution to, through and from him under this chapter."

The administrator reasons that whether a child has acquired the requisite status of legitimacy to bring him within the class of persons permitted to inherit in New Jersey is a

question of descent and distribution, and as Santo was not legitimated under *N. J. S.* 3A:4–7, he is not entitled to inherit his father's estate. In addition, the administrator urges that the act of acknowledgment performed by Alberto after the birth of Santo will legitimatize Santo as to Alberto only if the law of the domicile of Alberto at the time so provides. New Jersey, the domicile of Alberto, does not so provide and thus Santo may not inherit.

Finally, the administrator argues that the status of an acknowledged natural child under Italian law is not the equivalent of a legitimate child under Italian law and, therefore, even if Italian law is applied to determine the legitimacy of Santo, his claim must still be rejected. As Santo is not Alberto's legitimate child, he may not inherit from Alberto.

## II

A preliminary determination must be made as to whether the effect of the acknowledgment of Santo by Alberto is governed by Italian law or New Jersey law.

It does not necessarily follow that for one to be the acknowledged natural son of his father he must be such under the internal law of the situs of the land to be inherited, for under New Jersey conflict of law rules, the status and relationship of a person to another person are fixed by the law of the state or country having jurisdiction to grant the status so claimed. *Stellmah v. Hunterdon Coop. G. L. F. Serv., Inc.,* 47 *N. J.* 163, 173 (1966), and *Zanzonico v. Neeld,* 17 *N. J.* 490, 497–499 (1955).

In *Zanzonico,* a child had been adopted under a decree entered in Italy, which decree did not comply with the adoption laws of New Jersey. The court held that this judgment of adoption granted by a foreign country should be given the same stature as if the judgment had been rendered and entered in our State because it was not contrary to the policy of our State. In *Stellmah,* a child who was, under Quebec law,

the adopted son of decedent at the time of his death was held to be entitled to workmen's compensation death benefits under the New Jersey Workmen's Compensation Act, even though the adoption did not comply with the laws of New Jersey.

Thus, if New Jersey law is to govern the status of Santo, it will so govern not because New Jersey law governs the descent and distribution of Alberto's property, but because New Jersey was the domicile of the father when the acknowledgment took place and, thus, New Jersey had jurisdiction to affix the status. If Italian law is to be applied, it is so applied because Italy was the residence of Santo at the time he was acknowledged and, thus, Italy had jurisdiction to affix the status of Santo.

We hold that the acknowledgment of a child under the law of a jurisdiction which is the residence of the child at the time of the acknowledgment will be given the same effect as though such acknowledgment had been rendered and entered in this State. See *In re Lund's Estate,* 26 *Cal.* 2d 472, 159 *P.* 2d 643, 62 *A. L. R.* 2d 606 (*Sup. Ct.* 1945); Annotation, 87 *A. L. R.* 2d 1274, 1280 (1963). There is no public policy in New Jersey against such legitimations or acknowledgments.

It would be neither just nor desirable to deny the status conferred upon the child by sister-states and foreign countries. Such a result would defeat the intentions of the parents by their acts of legitimation and acknowledgment. It is not unreasonable for a father, a resident of Newark, to expect that an acknowledgment of his child, a resident of Italy, valid under Italian law, would be recognized by other states, and we so conclude. A child duly legitimated or acknowledged in a state having jurisdiction over his status will be afforded the same status in New Jersey as he was given by the law of the place of the legitimation or acknowledgment. See *Greaves v. Fogel,* 12 *N. J. Super.* 5, 7 (*App. Div.* 1951); *Dayton v. Adkisson,* 45 *N. J. Eq.* 603 (*Ch.* 1889).

## III

■ The issue now becomes whether a child validly acknowledged under the law of Italy has a status sufficient to enable him to inherit under New Jersey law. We hold that a child so acknowledged may inherit under New Jersey law.

The status of an acknowledged natural child is a hybrid status between legitimate and illegitimate child known to civil-law countries but not to common-law countries. The early common-law courts showed an unyielding refusal to give any legal recognition to an illegitimate child. Their attitude was described by Blackstone when he wrote that "[such a child's] rights are very few, being only such as he can acquire; for he can inherit nothing, being looked upon as the son of nobody; and sometimes called *filius nullius*, sometimes *filius populi*." 1 *Blackstone, Commentaries,* 458. See comprehensive analysis in *Hammond v. Penn. R. R. Co.,* 31 *N. J.* 244, 251–253 (1959).

The rights denied to an illegitimate child have been characterized in *Zepeda v. Zepeda,* 41 *Ill. App.* 2d 240, 190 *N. E.* 2d 849 (*App. Ct.* 1963), *certiorari* denied 379 *U. S.* 945, 85 *S. Ct.* 444, 13 *L. Ed.* 2d 545 (1964), as the rights to be a legitimate child, to have a normal home, to a legal father, to inherit from his father, and to inherit from his paternal ancestors. Whether society should continue to attach a stigma to illegitimacy is debatable. See authorities gathered in "Compensation for the Harmful Effects of Illegitimacy," 66 *Colum. L. Rev.* 127 (1966). Recognition of the rights of an illegitimate child is a recent development of the law.

Many state legislatures, recognizing that the handicaps of illegitimacy punish the innocent child, have acted to soften the common-law rule by removing some of the handicaps of illegitimacy. Legitimation requirements have been liberalized and inheritance rights have been expanded.[1]

---

[1] Many states provide, as New Jersey does, for legitimation by subsequent marriage of the parents. See, *e. g., Wis. Stat. Ann.,* § 245.25 (*Supp.* 1967). In several states every child is the legitimate child of

In New Jersey, an illegitimate child is treated as the legitimate child of his mother, and if his parents marry after the birth of the child, the illegitimate child is treated as a legitimate one. *N. J. S.* 3A:4–7. A child born out of wedlock is entitled to support by the natural father just as if he were born in lawful wedlock. *N. J. S. A.* 9:16–2. Illegitimate children are children within the Federal Employers' Liability Act. See *Hammond v. Penn R. R. Co., supra,* 31 *N. J.* 244.

Many civil-law legal systems influenced by the Code of Napoleon adopt a different approach to natural children. By "voluntary acts" a parent can raise the status of his natural child to the status of a "recognized [or acknowledged] natural child," thereby giving rights of inheritance and certain social benefits to the child. Thus, in these civil-law countries there are three categories of children—"legitimates," "acknowledged natural children," and "illegitimates." There are two different processes for changing status—"legitimation" and "acknowledgment."

▮ The common-law jurisdictions do not recognize the acknowledged status. In those common-law jurisdictions where a procedure is available affording the parents an opportunity to acknowledge or recognize their natural children,

---

his natural parents and is entitled to inherit from his natural parents, whether or not the parents have been married. The act of birth itself makes the child legitimate. See, *e. g., Ariz. Rev. Stat. Ann.,* § 14–206 (1956), and *Ore. Rev. Stat.,* § 109.060 (1963). Others require marriage of the parents and acknowledgment by the father or adjudication of paternity. See, *e. g., Del. Code Ann., Title* 13, § 1301 (1953).

A number of states enable a child to inherit from or through the father, to obtain full legitimacy or to obtain the rights of legitimacy if the father acknowledges paternity by some affirmative act. See, *e. g., Cal. Prob. Code,* § 255 (1959, *Supp.* 1966). In these states, if the father acknowledged the child, the child shall be deemed legitimate for purposes of succession. The formalities differ from state to state; some require merely an acknowledgment, some require it before witnesses, others require it to be executed before the court or filed with the court, or before a notary or a justice of the peace. See Ester, "Illegitimate Children and Conflict of Laws," 36 *Ind. L. J.* 163 (1961).

typically, the recognized natural child is classified as a legitimate child, or treated as a legitimate child, because the class of "acknowledged natural children" does not exist in common-law jurisdictions. See *Robles v. Folsom*, 239 *F. 2d* 562, 566 (2 *Cir.* 1956), *certiorari* denied 353 *U. S.* 960, 77 *S. Ct.* 869, 1 *L. Ed.* 2d 911 (1957), dissenting opinion of Judge Clark. See also *Vazquez v. Ribicoff*, 196 *F. Supp.* 598 (*D. C. P. R.* 1961) ; *Flores v. Secretary of Health, Education and Welfare*, 228 *F. Supp.* 877 (*D. C. P. R.* 1964) ; Ester, "Illegitimate Children and Conflicts of Laws," 36 *Ind. L. J.* 163, 181 (1961).

In Italy there are two methods of giving a child born out of wedlock a status similar to that of a legitimate child. One method, called legitimation, by subsequent marriage or presidential decree, attributes to the child born out of wedlock the character of a legitimate child in all respects. Italian *Civil Code, Art.* 280, 283. The other method, called acknowledgment, establishes the legal bond of filiation between one or both parents and the child and thereby gives rise to certain rights which are similar to that of a legitimate child.

The acknowledgment is a declaration made by one or both of the parents, jointly or separately, *Art.* 250, to the effect that the father (or mother) recognizes the individual as his child. If acknowledged by the father or both parents, the child adopts the name of the father. If acknowledged by the mother, the child takes the name of the mother. *Art.* 262. The natural parents must support the recognized child and must maintain, educate, and instruct the child as if the child were legitimate. *Art.* 261; *Constitution of the Republic of Italy, Art.* 30. See *Cappelletti, Merryman, Perillo, The Italian Legal System, p.* 287 (Stanford University Press 1967). The acknowledgment shall be made, in the registry of birth, by a declaration after the birth or the conception of the child, before a judge, in a public document, or in a will. Such an acknowledgment is irrevocable. *Arts.* 254 and 256.

It is clear that under *Arts.* 261 and 262 of the Italian *Civil Code* the father, Alberto Spano, had the same obligation to his acknowledged natural child that a father would have as to a legitimate child in respect to support, education, and maintenance. The Italian *Civil Code* distinguishes between a legitimate child and an acknowledged natural child only in terms of descent and distribution. Acknowledged natural children inherit one-half of the share to be taken by legitimate children provided the share of legitimate children, taken as a whole, shall not be less than one-third of the entire estate. *Art.* 574. If there are no legitimate descendants or surviving spouse (as is the case here), acknowledged natural children inherit the entire estate. *Art.* 576.

Under his status as an acknowledged natural child, Santo was given the name of his father and was entitled to support, maintenance, education and instruction from his father as if he were legitimate. The acknowledgment also brought with it a change in the registry of his birth. Because Alberto had no legitimate descendants, Santo, as his acknowledged natural child, has sole rights to inherit Alberto's entire estate. See *Gjupanovich, Acknowledgment Under Italian Law,* Washington, D. C. (1954), available at The Library of Congress, Washington, D. C.

The incidents thus attributed to Santo's status as a recognized natural child resemble very closely the incidents that New Jersey attaches to an adopted child, legitimated child, or legitimate child.

To accept the administrator's theory that Santo is not entitled to inherit because he is not the legitimated child of Alberto within the strict connotations of our internal law, in practical effect would prevent children acknowledged under the laws of other jurisdictions, which are more tolerant than New Jersey regarding illegitimate children, from inheriting property in this State. Such a result would not be compatible with what the Legislature had in mind respecting the welfare of illegitimate children. The mere expression by the Legislature that illegitimate children may be treated

as legitimate children in certain situations under *N. J. S.* 3A :4–7, confirms this conclusion. See also *N. J. S. A.* 9 :16–2.

We believe that these enactments are persuasive evidence that our public policy is cognizant of the rights of illegitimate children to such a degree that the courts of this State are not precluded from recognizing a foreign acknowledgment entered under the laws different from our own merely because the laws of the place of the acknowledgment are more tolerant than our own.

Reversed; no costs.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.