Patrocinia **PEREZ**, Plaintiff,

v.

John W. **GARDNER**, Secretary of Health, Education, and Welfare, Defendant.

No. 64-C-296.

United States District Court
E. D. Wisconsin.

Dec. 20, 1967.

---

Harvey L. McCormick, Milwaukee, Wis., for plaintiff.

Thomas R. Jones, Asst. U. S. Atty., James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

## OPINION AND ORDER

TEHAN, Chief Judge.

This is a proceeding under § 205(g) of the Social Security Act (42 U.S.C.

§ 405(g)) for judicial review of a final administrative decision of the United States Department of Health, Education and Welfare, denying the plaintiff's application for social insurance benefits prior to the month of September, 1965. That decision, rendered by the Department's Appeals Council on December 8, 1966, in turn affirmed a decision of the Government hearing examiner, issued on October 31, 1966. Both a motion and a cross-motion for summary judgment have been filed here. There are thus no questions of fact involved, so that it is not a matter whether the Department's decision is supported by substantial evidence, but simply, whether in the light of the uncontroverted facts, the Department made the proper choice and application of law. To set in perspective this issue of law, a brief summary of the facts and history involved in the plaintiff's case will be necessary.

The plaintiff, Patrocinia Perez, a resident of Wisconsin, is the mother of four children admittedly fathered by decedent Gregorio Flores, who died domiciled in New York on March 22, 1962. Three of these children were born in Puerto Rico (in 1946, 1948 and 1949, respectively) and the fourth in Wisconsin (in 1956), the latter after each parent's removal to the mainland. The record shows that the parents were never formally married to each other. It is undisputed that the decedent, Gregorio Flores, formally acknowledged the paternity of the children shortly after each of their births. His acknowledgment of the first three children was made before the Registrar of Public Health in Puerto Rico, and that of the fourth was made on a baptismal record in accordance with Wisconsin statute; as we shall see, these acts of acknowledgment potentially affect the rights of the minors to receive social security benefits.

On November 8, 1962, the plaintiff applied for survival insurance benefits under the Social Security Act, as amended, on behalf of the decedent, and for the children. Her application was denied both initially (January 19, 1963) and on reconsideration (July 23, 1963) based on initial determination by the Department that the "children do not meet a requirement of the social security law [that] the children must have been dependent upon the father at the time of the father's death. * * *"

The plaintiff then petitioned the Department for a hearing, which was held on February 4, 1964;[1] the hearing examiner having there denied the plaintiff's claim on the basis that none of the four minor claimants had the requisite status of "child" under the Act, the plaintiff sought but failed to obtain review by the Appeals Council. Plaintiff then filed a civil action in this court, which by order dated October 6, 1965, remanded the matter to the Appeals Council for further administrative action. The Appeals Council vacated its denial of the claimant's request for review of the hearing examiner's decision and remanded the matter, in turn, to the hearing examiner for further proceedings. Pursuant thereto, a hearing was held on September 20, 1966, in which the examiner partially modified his earlier decision preliminarily by permit-

1. The hearing examiner's recount, chronologically, of the relationship among the mother, father and children, is as follows (Page 2):

"It is also apparent from the evidence, and conceded by Mrs. Perez, that she and the wage earner were never ceremonially married. They lived together and had three children in Puerto Rico between 1945, when they began living together, and the early 1950's when the wage earner came to this country without her. Mrs. Perez did, however, come to this country in May, 1955.

After she arrived they appear to have resumed living together for a period of about one year and to have had one more child, Gregory, who was born on February 17, 1956. The wage earner then left Mrs. Perez in early May, 1956; ceremonially married another woman in New York on May 27, 1956 by whom he had previously had 3 children born in 1948, 1950 and 1951 (Ex. 2); and lived in New York until his death in March, 1962, about six years after he left Mrs. Perez in Wisconsin where she remained."

ting limited benefits beginning September, 1965, by virtue of more liberal social security legislation enacted in that year.[2] The Appeals Council having affirmed this decision on December 8, 1966,[3] the matter once again was brought before this court for judicial review.

To summarize, the plaintiff has now recovered partial social security benefits for her children, under a liberalizing 1965 federal statute, but contends that she is entitled to further benefits under the federal statute in force before 1965. The earlier statute, unlike its 1965 replacement, foreclosed "illegitimate" children from receiving benefits accruing to the beneficiaries of a deceased father from his payments under the Act. Plaintiff contends that the federal authorities, as a matter of law, have misconstrued the basis for determining (1) whether the children were illegitimate, and (2) even if they would otherwise

be deemed illegitimate, under the "law" of the decedent's domicile at his death, whether acknowledgment of paternity by the deceased father will place the children in the same position as legitimate children so as to permit the plaintiff to recover for them under the pre-1965 statute.

In determining whether the plaintiff's children are entitled to benefits under § 202(d) of the Social Security Act, we are obliged to follow § 202(d)(1)(c) thereunder, which provides that every child of an insured decedent is entitled to child's insurance benefits if such minor was "dependent" upon the insured individual at the time of his death.

Section 202(d)(3) of the Act (42 U.S.C.A. § 402(d)(3) defines dependency for this purpose as follows:

"A child shall be deemed dependent upon his father or adopting father at the time specified in paragraph

**2.** Effective with benefits for months beginning September 1965, the Social Security Act was amended to provide that upon failure of an applicant to qualify as a child pursuant to relevant State law under section 216(h)(2), section 216(h)(3) provides, in applicable part:

"An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

(C) in the case of a deceased individual—

(i) such insured individual—

(1) had acknowledged in writing that the applicant is his son or daughter * * * and such acknowledgment * * * was made before the death of such insured individual * * *."

**3.** The Appeals Council held as follows (Pages 1–2):

"Careful consideration has been given to the comments submitted by plaintiff's counsel. In essence he asserts that the Puerto Rico legitimating statute (31 Laws of Puerto Rico Annotated, 441), as interpreted by the Supreme Court of Puerto Rico in the case of Ocasio v. Diaz, applies to 'legitimate' the child claimants born in Puerto Rico. Since

the wage earner died domiciled in New York, it is the law of that state that is applicable in this case. Under New York law, legitimation after birth is controlled by the law of the father's domicile at the time the alleged legitimating action is undertaken by him. Since the wage earner was never domiciled in Puerto Rico at any time when the aforesaid statute (effective July 25, 1952) was in effect, its provisions are not controlling in this case. The record clearly demonstrates that the deceased wage earner never returned to Puerto Rico after 1951 (except for a few weeks on a visit to see his ailing and dying father which did not operate to establish a domicile there). The record is also devoid of proof of any act which occurred while the wage earner was domiciled in Puerto Rico and which would have constituted a legitimating act under Puerto Rican law at that time. Consequently, Puerto Rican law is ineffective to legitimate the child claimants herein.

After careful consideration of the entire record, the Appeals Council adopts the hearing examiner's findings of fact, inferences and conclusions, as set forth in his recommended decision.

The hearing examiner's decision of October 31, 1966, is hereby adopted and made the decision of the Appeals Council."

(1) (C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—(A) such child is neither the legitimate nor adopted child of such individual, or (B) such child has been adopted by some other individual. For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h) (2) (B) of this title shall, if such individual is the child's father, be deemed to be the legitimate child of such individual."

Since the evidence shows that the decedent, Gregorio Flores, was neither "living with" nor "contributing to the support of" the children, it follows that, under § 202(d) (3) they cannot be "deemed" dependent on him unless they were "legitimate" children. Stripping off yet another leaf of the definitional artichoke, we find, in § 216(h) (2) (A) of the Act that:

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such individual is dead by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the Courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

■ Thus the instant choice-of-law issue is to be resolved explicitly in accordance with the above federally prescribed formula. Cruz v. Gardner, 375 F.2d 453 (7th Cir., 1967). Accordingly, we must turn initially to the whole law—including not only the local substantive law, but also ancillary choice-of-law rules —of New York, uncontestedly "the State in which [the insured] was domiciled at the time of his death."

■ Under the whole law of the State of New York, the law applicable in the intestate devolution of personal property is that of the domicile of the decedent at the time of his death, namely New York law. N.Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 47 (McKinney ed.); Rivera v. Celebrezze, 248 F.Supp. 807 (D.P.R.1966). All *renvoi* problems are thereby obviated and we may proceed to examine the substantive law of inheritance of the State of New York.

■■ Unquestionably the New York substantive law applicable here, taken by itself, would preclude intestate inheritance from a father by his child, once the latter is deemed illegitimate. In re Slater's Estate, 195 Misc. 713, 90 N.Y.S. 2d 546 (1949); see also the recent decision in In re Consolazio's Estate, 54 Misc.2d 398, 282 N.Y.S.2d 905 (1967). It is also clear that where father and son are co-domiciliaries of New York, New York courts will call for the New York definition of filiation, which is in conformity with the conventional Anglo-Saxon delineation between birth in wedlock and birth out of wedlock. Rivera v. Celebrezze, supra.

But a recitation of such authority is not dispositive of the instant case. The choice of law governing the necessary definition of "legitimacy" preliminary to applying the New York inheritance law, is prescribed by neither federal nor New York statute. The New York substantive law, it may be presumed, is addressed, not necessarily to the present circumstances, but rather to the garden variety domestic situation involving no conflict of laws problem; here, however, the New York definition of filiation might collide with other applicable law. Therefore, we must advert to New York conflicts jurisprudence in order to ascertain, as a matter of characterization, whether New York or foreign law would be applied by the New York courts. It should be

stressed that a policy articulated by statute does not necessarily contemplate a multi-jurisdictional dispute such as the one at bar, and that the failure to recognize the implications of multi-jurisdictional as opposed to purely domestic contacts has resulted in a welter of disturbing and often conflicting precedent, much of it spurious because of its imperviousness to underlying multi-jurisdictional policy considerations. See Von Mehren and Trautman, The Law of Multi-State Problems, 215–219 and passim (1965).

At this juncture we must digress briefly in order to sketch the relevance of the choice of law question. New York is clearly a concerned jurisdiction by terms of the Social Security Act and by virtue of contacts incidental to the decedent's final residence, marriage and death there. But so are Wisconsin and Puerto Rico, the latter by virtue of the birth of three of the minors there as well as by virtue of the continued familial relationship in that Commonwealth between the putative father and the minors; and the former by virtue of the contacts there of both parents and the minors, especially the fourth, who was in fact born there. It will be necessary briefly to examine the relevant foreign law which in the case of Puerto Rico is contrary to common law conceptions of filiation prevailing in Wisconsin and New York, under which the children unquestionably would be deemed illegitimate.

██ Following a tradition of Roman law adhered to by numerous civil law jurisdictions and contrary to Anglo-American practice, *three* types of filiation are recognized in Puerto Rico, namely, *legitimate, illegitimate,* and *natural.* For an excellent discussion of this custom and its significance in Anglo-American courts, see Judge Clark's dissent in Robles v. Folsom, 239 F.2d 562, at 565–568 (2d Cir., 1956). By Puerto Rican statute (31 Laws of Puerto Rico §§ 504, 506 and 2431), a child is natural if, having been born a bastard, his paternity is timely acknowledged by the putative father. As noted above, it is uncontroverted that the prescribed acknowledgment of the plaintiff's first three children was properly made, so that under Puerto Rican law, these minors are "natural" and not illegitimate.

██ As to the fourth child, Wisconsin is the concerned jurisdiction. The decedent's acknowledgment of his paternity of the fourth child under Wisconsin law rendered him an heir but not a "natural" child in the Puerto Rican sense.

The question of the extraterritorial status of natural children is problematical. More concretely stated, we are concerned with whether such a natural child would be treated as legitimate or illegitimate by the New York courts, which, as we have noted, is a question preliminary to application of the New York inheritance law. A leading federal case, Robles v. Folsom, supra, held that a recognized natural child under Puerto Rican law would not be deemed legitimate for inheritance purposes in the state of decedent's domicile, New York. Chief Judge Clark wrote an eloquent and vigorous dissent therein, which attributed what he considered to be the harsh result of the decision to the practice of

"* * * forcing Anglo-Saxon moral patterns on a family having its origin in the more tolerant atmosphere of Puerto Rico and the civil law it follows. And this, in turn, comes about from an emphasis on names and labels, rather than on substance, in translating civil law concepts into New York equivalents." (Robles v. Folsom, supra, 239 F.2d at 565–566).

Notwithstanding the persuasiveness of this comment, it is part of a dissent; therefore it would appear at first that *Robles* is controlling here. That decision is, however, distinguishable because it was decided in 1956, prior to a landmark 1963 decision of the Supreme Court of Puerto Rico, which rendered retroactive an important Puerto Rican constitutional Act enacted by the legislature of the Commonwealth on July 25, 1952. It will be noted that this date of enactment was approximately one year after the removal of Gregorio Flores to the mainland—

first to Wisconsin, later to Michigan, and finally to New York.

The Act (31 Laws of Puerto Rico Annotated § 441) provides that:

"All children have, with respect to their parents and with respect to the property left by the latter, the same rights that correspond to legitimate children."

It is well-established that this Act entitled legitimated, so-called "natural children" to full rights of inheritance. See e. g., Torres v. Gardner, 270 F.Supp. 1 (D.P.R., 1967). Furthermore, the Act goes even further in extending traditional civil law liberality in regard to the status of bastards so as to prohibit *all* discrimination based on birth, not only in regard to the right of inheritance.

As noted earlier, the Supreme Court of Puerto Rico in its June 27, 1963 decision in Ocasio v. Diaz[4] 1963 Colegio de Abagados 119 (D.S.C.P.R.1963), made this act retroactive to cover children born prior to July 25, 1952. Thus Puerto Rican law legitimates an acknowledged natural child—such as the plaintiff's—for all purposes including the Social Security Act.[5]

## CHOICE-OF-LAW.

In conformity with the policy enunciated by the United States Supreme Court that domestic relations similar to those here involved are a matter primarily of state, not federal, concern (De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956)), the New York courts supplement their inheritance law by reference to status characterization strictly within the realm of state—as opposed to federal—law. To begin with, the New York courts have

4. *Ocasio* interpreted the 1952 Act as follows:

" * * * They repealed any law or part of law which in one way or another established or might establish classes or categories of children by reason of their birth or which might use those classes or categories as a guide or index to grant rights.

If they made no distinction, we are helpless to do so. We should not get lost in the labyrinth of unjust distinctions. In the interpretation and application thereof, the basic postulate [of] human equality before the law should be our guiding star in the most honest, but also the most ungrateful(1), task of man: to do justice unto others. Equality for the aged and for the young in participating in the enjoyment of every substantive right; equality for all in the juridical treatment before the adjective law in every process of social or patrimonial revendication." (Pages 126–127)

In concluding an exhaustive and somewhat exhausting 166-page opinion, the Supreme Court of Puerto Rico held, *inter alia*, as follows:

" * * *

2. The father, or in his default, his heirs, may acknowledge in any way their children, expressly or impliedly, regardless of the dates or circumstances of their births and for all legal purposes;

3. No judicial declaration of the status of child shall make any pronouncement as to the legitimacy or illegitimacy of the birth of the petitioner nor as to the civil status of their parents. The petitioner shall be simply called 'child' and his progenitors 'father' or 'mother,' as the case may be;

4. Every judicial declaration of status of child shall be based on the establishment of the fact of natural or biological paternity, regardless of the date or other circumstances of birth, * * *." (Pages 161–162)

5. In digesting *Ocasio*, the Social Security Administration commented as follows:

"The court ruled, in effect, that from July 25, 1952, with respect to the legal status of children, there were no longer any distinctions based on the circumstances of birth, i. e., that all children simply have the status of 'children' of their parents to whom they are legally filiated and that, accordingly, all children have equal inheritance rights with respect to such parents. As to the children born out of wedlock, their filiation to their natural father, where possible, may be by 'voluntary recognition' by the father or may be judicially compelled. The term 'voluntary recognition' in light of the decision in Ocasio v. Diaz, supra, includes any act or deed, express or implied, by which the father (or his heirs) acknowledges or recognizes the child as his own. The 'voluntary recognition' may have occurred either before or after July 25, 1952." Rulings on Federal Old-Age Survivors, Disability and Health Insurance," SSR 66–46, at 22–23 (1966).

consistently held that where the foreign law is one which merely enables a bastard to inherit from the putative father as distinguished from one which legitimates him for more general purposes, it is one merely of descent which governs solely the inheritance of property in Puerto Rico, and therefore will be accorded no extraterritorial effect by the New York courts, in disregard of interstate comity. Thus, were the Puerto Rican statute merely operative in regard to formal filiation for purposes of inheritance alone, it would have no extraterritorial effect such as, hypothetically, to govern the State of New York's disposition of the case. In re Tomacelli-Filomarino, 189 Misc. 410, 73 N.Y.S.2d 297 (1947); In re Vincent, 189 Misc. 489, 71 N.Y.S.2d 165 (1947). But here, by contrast, the statute (viz. 31 Laws of Puerto Rico § 441) has been given a much broader application so as expressly to legitimate a bastard for *all* purposes as between parent and child. It is well established by both New York and federal precedent that the child's newly legitimated status will follow him, in effect according extra-territoriality to the foreign law even so as at times (such as here) to contravene the ordinary characterization by courts at the situs of property or domicile of the intestate at the time of his death. Miller v. Miller, 91 N.Y. 315 (1883). In re Slater's Estate, 195 Misc. 713, 90 N.Y.S. 2d 546 (1949); Pfeifer v. Wright, 41 F. 2d 464, 73 A.L.R. 932 (10th Cir., 1930) (notwithstanding different rules of filiation applied therein).

 Once foreign law is permitted to govern the definition of legitimacy, then it is simply a question of fact as to the date at which the characterization is to apply. To be sure, this question is complicated here by the fact that the child was a Puerto Rican domiciliary whereas the putative father was then a Wisconsin domiciliary at the time of the legitimating statutory act (bearing in mind that the *Diaz* decision, supra, accorded retroactivity to the legitimating statute). The problematical nature of the question before us was recognized by the defendant in its Supplementary Memorandum in Support of his Motion for Summary Judgment after Remand. One sentence of that memorandum (Page 4) will serve as a restatement of the problem:

> "New York cases have never dealt directly with a case where a father's domicile at the time of his legitimating action or statutory legitimation was different from that of the child."

Nevertheless, there exists a consistent line of New York precedent standing for the majority proposition that, as to filiation of a child pursuant to an act of acknowledgment by the putative father, the child's status is governed by the law of his domicile either as of the time of his birth, or as of the time of a formal legitimating act. In re Tomacelli-Filamarino, supra, In re Vincent, supra. One further case, In re Bruington's Estate, 160 Misc. 34, 289 N.Y.S. 725 (1936) (a case involving a polygamous marriage) is even more directly apposite here in holding that, aside from a few express exceptions controlling there but inapplicable here, a child's status pursuant to *statutory* legitimation is dependent upon the place of the child's birth. For excellent recent authority for this position, from another jurisdiction, see In re Estate of Spano, 49 N.J. 263, 229 A.2d 645 (1967).

 We hold, therefore, that once the New York whole law is invoked by terms of the Social Security Act, and the whole law in turn refers to the New York law of inheritance, a consistent line of authority from that jurisdiction dictates supplementation on the status of filiation, by reference to the law of the domicile of the child either at the time of his legitimation or as of his birth.

 Accordingly, we hold that as to the one child, Gregorio Flores, Jr., born in the State of Wisconsin, the plaintiff, Patrocinia Perez, is entitled to no benefits on behalf of Gregorio Flores, Sr. prior to the enactment of the new Social Security legislation in September, 1965. We reach this conclusion because the rele-

vant Wisconsin statute pertaining to the heirship of bastards [6] legitimates a child *for purposes of inheritance alone,* upon acknowledgment of paternity by the father. This statute thus falls short of the broad legitimation accorded by its counterpart in Puerto Rican law; therefore it may safely be presumed that the acknowledgment of the fourth child's paternity would be given no extraterritorial effect by the New York courts. In re Tomacelli-Filomarino, supra, and In re Vincent, supra.

As to the remaining three children, all born prior to 1952 in the Commonwealth of Puerto Rico, we hold that plaintiff is entitled to full benefits to begin on March 22, 1962, the date of the death of Gregorio Flores, Sr.

Our decision is firmly in line with the emerging policy of wider recognition of the rights of illegitimate children as well as with the increasing proclivity of federal courts to grant comity to non-Anglo-Saxon norms. See "Compensation for the Harmful Effects of Illegitimacy," 66 Colum.L.Rev. 127 (1966); In re Estate of Spano, supra. Blackstone's concept of *filius nullius* is receding, and emerging in its place are more equitable notions of the rights of children born out of wedlock. As Mr. Justice Douglas, quoting earlier authority, stated in his dissent in De Sylva v. Ballentine, 351 U.S. 570, 583–584, 76 S.Ct. 974, 981, 100 L.Ed. 1415 (1956):

> "Humane considerations and the realization that children are such no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view."

Accordingly it is ordered: That the December 8, 1966 decision of the Appeals Council of the Department of Health, Education and Welfare be vacated and that the matter be remanded to the Social Security Administration, which is directed to pay insurance benefits on behalf of Gregorio Flores, Sr., to his three children—Aida M. Flores, Edna M. Flores and Gloria Ines Flores,—to begin March 22, 1962.

---

6. The only potentially beneficial law (Wisconsin Statutes § 237.06) later amended, reads in relevant part as follows:
"Every illegitimate child shall be considered as heir of the person who shall, in writing signed in the presence of a competent witness, have acknowledged himself to be the father of such child or who shall be adjudged to be such father under the provisions of ss. 52.21 to 52.45, or who shall admit in open court that he is such father, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in the same manner, as if he had been born in lawful wedlock * * *."