Nereida VEGA, on Behalf of Minerva MORALES, Minor, illegitimate child of Enos Morales, deceased, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Civ. No. 86–0337 (JAF).

United States District Court, D. Puerto Rico.

July 23, 1987.

**660**

Rafael Carreras-Valle, San Juan, P.R., for plaintiff.

Asst. U.S. Atty., Wanda Rubianes-Collazo, Daniel López-Romo, U.S. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Minerva Morales, a minor, seeks Social Security benefits as a child of a deceased, insured wage earner, Enos Morales, pursuant to the Social Security Act, 42 U.S.C. sec. 402(d). The minor, represented by her mother Nereida Vega, seeks judicial review under section 205(g) of the Act, 42 U.S.C. sec. 405(g), of a final decision of the Secretary of Health, Education, and Welfare (Secretary) disallowing the survival benefits.

On June 5, 1984, Nereida Vega, formerly a resident of the state of New York, appearing on behalf of minors Minerva and Adrienne Morales, applied for survival insurance benefits under the Social Security Act. Application was denied on November 1, 1984 as to plaintiff Minerva Morales, pursuant to determination by the Secretary that, to qualify for child benefits, such minor must: (1) have the legal relationship of a child of an insured individual for inheritance purposes under the laws of New York, or (2) the parents must be legally married. Since neither requirement had been met, Minerva Morales did not qualify for benefits [1]. Plaintiff filed a request for reconsideration which was denied on March 6, 1985. The case was brought before the

hearing examiner on August 5, 1985 and a notice of denial was issued on August 23, 1985. A request for hearing on review of decision was granted, where the Appeals Council, on January 13, 1986, affirmed the denial of the Administrative Law Judge (ALJ). The case is now before this court for judicial review of the final decision of the Secretary.

## I.

The facts of the case are as follows. Nereida Vega, of Fajardo, Puerto Rico, moved to Brooklyn, New York, in order to live with her mother, María Mercado. There, she met wage earner Enos Morales. Nereida and Enos established a common-law relationship, whereby Nereida would live with Enos for short periods of time.

As a result of the extramarital relationship, minors Minerva and Adrienne Morales were born out of wedlock. On or about the year 1980, Nereida Vega moved back to Puerto Rico with her daughters. Wage earner Enos Morales died in New York on May 9, 1984.

As a result of the death of the wage earner, Nereida Vega and her mother María Mercado commenced proceedings before the Social Security Administration, seeking survival benefits for Nereida's minor children. María Mercado declared in a statement subscribed on a standard Social Security form that Enos Morales had admitted being the father of minor Minerva Morales. In turn, Nereida Vega brought evidence that from 1970 to 1972 and possibly 1973, she lived with the wage earner and the girls in a Brooklyn housing project.[2] The record also contains statements from a Mr. Chen Chu, Nereida's former landlord, and from a Mr. Gilberto Lopez, a family friend, to the effect that Enos Morales admitted being Minerva's father. The record also shows that Nereida and Enos intended to move back to Puerto Rico. Nereida Vega moved back to Puerto

---

1. Plaintiff alleges that the child's insurance benefit was given to her sister, Adrienne Morales. Docket document No. 8, at 15. The record does not shed light on this aspect.

2. The record also suggests that after a period of incarceration, both Nereida and Enos lived together after the wage earner was freed on parole in 1977.

Rico in 1980 with her daughters; however, Enos never made it back, inasmuch as he died.

After returning to Puerto Rico, Ms. Vega and minor Minerva Morales maintained written and telephone communication with Enos Morales in New York. Ms. Vega declared in a statement that Enos Morales contributed to the house payments in Puerto Rico by sending her $60 to $90 a month. She also stated that Enos Morales had been the only man in her life and that the fact that he was Minerva Morales' father was never put in doubt. The evidence in the record demonstrates that Enos appears as Minerva's father in her birth certificate (1969), Baptism certificate (1980), and school records of Puerto Rico (1981–82, 1982–83). (Exhibits 6, 7, 19–3). The father and daughter relationship was widely known throughout the neighborhood. (Tr. 16, 23).

After evaluating all the evidence, the ALJ concluded that the law applicable to establish the paternity in this case was New York law.[3] The ALJ adopted the clear and convincing evidence standard contained in New York law to determine if the wage earner had openly and notoriously acknowledged plaintiff as his child, as presently required in New York.[4] The judge was not convinced that paternity was established by the New York standards of clear and convincing evidence or that the alleged father had openly and notoriously acknowledged plaintiff as his child. The ALJ gave no importance to the fact that the wage earner's name as father of plaintiff appeared on some of the child's documents. He found that there was no evidence that wage earner gave an oral or written permission for the inclusion of his name in such documents.

## II.

Plaintiff alleges that both Nereida Vega and wage earner, the parents, are Puerto Ricans, that she was domiciled in Puerto Rico at the time of her father's death, and that, therefore, she is protected by the Constitution and the laws of Puerto Rico. Article II, section 1, of the Constitution of the Commonwealth of Puerto Rico states that there shall be no discrimination due to race, color, sex, origin or social condition nor political or religious beliefs. The Supreme Court of Puerto Rico, in the case of *Ocasio v. Diaz*, 88 D.P.R. 676 (1963), interpreted this section as meaning that (1) all children are legally equal since the approval of the Constitution of the Commonwealth of Puerto Rico, and (2) that there are no illegitimate children in Puerto Rico.

In order to pass upon this claim, we look at The Restatement (Second) of Conflict of Laws, section 287, which states:

Sec. 287 Law Governing Legitimacy
(1) Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent under the principle stated in section 6.

It follows that the status of legitimacy is to be preferred over that of illegitimacy, and compliance with the legal requirements to establish filiation under the laws of the state of the child's domicile should be enough to legitimate the child. *Montgomery v. Schweiker*, 523 F.Supp. 1128 (D.Md.1981). The status of legitimacy pertaining to plaintiff Minerva Morales should be decided by the courts of her domicile, Puerto Rico. *In re Tomacelli-Filomarino*, 189 Misc. 410, 73 N.Y.S.2d 297 (Sup.Ct.1947); *Rivera v. Celebrezze*, 248 F.Supp. 807, 810 (D.P.R.1966).

Since this has not been done, the instant choice of law issue is resolved by looking initially to federal law and to the law of New York, the state in which wage earner was domiciled at the time of his death. *Rivera v. Celebrezze*, 248 F.Supp. at 812. New York law, in turn, brings into play Puerto Rico law.

To qualify for benefits as a surviving child, plaintiff must be determined to be a

---

**3.** The ALJ did not permit any presentation of the possibility of applying Puerto Rico law to establish a legitimation of the plaintiff, Minerva Morales (Tr. 16, 37).

**4.** *See* N.Y.Est. Powers & Trusts Law, sec. 4–1.2 (Consol.1981).

**662**

"child" under 42 U.S.C. secs. 416(h)(2)(A), which states in pertinent part:

(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

This choice of law rule applicable to child benefit cases binds the court to first look at New York law, that being the domicile of wage earner at the time of death. *Allen v. Califano*, 452 F.Supp. 205, 209 (D.Md. 1978). However, the choice of law governing the necessary definition of "legitimacy" as a condition precedent to applying the New York inheritance law, is not prescribed by federal or New York law. Since the New York definition of filiation may be in conflict with the applicable law of other jurisdictions, we must analyze whether New York or other laws would be applied by the New York courts. New York is clearly a concerned jurisdiction under the terms of the Social Security Act and by virtue of contacts incidental to the decedent's final domicile and death there.[5] But so is Puerto Rico by virtue of the domicile of the plaintiff Minerva Morales at the time of wage earner's death.

Section 441 of Puerto Rico's Civil Code, 31 L.P.R.A. sec. 441 (1930), provides that:

All children have, with respect to their parents and with respect to the property left by the latter, the same rights that correspond to legitimate children.

It is well established that this section of the Code entitles all children to the full rights of inheritance. *Ocasio v. Díaz*, 88 D.P.R. 676 (1963); *Torres v. Gardner*, 270 F.Supp. 1 (D.P.R.1967); *Pérez v. Gardner*, 277 F.Supp. 985, 991 (E.D.Wis.1967).

### III.

Plaintiff may be eligible for benefits only if she would be entitled to inherit personal property from wage earner under the law that would be applied in determining the distribution of intestate personal property by the courts of wage earner's state of domicile at death. *In re Estate of Gabriel del Valle*, 126 Misc.2d 78, 481 N.Y. S.2d 232 (Sup.Ct.1984); *McBride v. Heckler*, 619 F.Supp. 1554, 1558 (D.N.J.1985); *Allen v. Califano*, 452 F.Supp. at 211; *Pérez v. Gardner*, 277 F.Supp. at 989; *Rivera v. Celebrezze*, 248 F.Supp. at 811. We hold, therefore, that once the New York law is invoked by terms of the Social Security Act, 42 U.S.C. sec. 402(d), it, in turn, refers to the New York law of inheritance, N.Y.Est. Powers & Trusts Law, sec. 4–1.2 (Consol.1981). This intestate inheritance statute, under conflict-of-law principle, would look to Puerto Rico law to determine Minerva's legitimation. *See Montgomery v. Schweiker*, 523 F.Supp. at 1133; *Pérez v. Gardner*, 277 F.Supp. at 992. Doing so, plaintiff would have the opportunity to be entitled to Social Security benefits as the child of the deceased wage earner.

Accordingly, since the Secretary failed to consider whether plaintiff was able to inherit as a legitimate child under Puerto Rico law, the case is REMANDED for further administrative proceedings which may include a stay of proceedings pending the outcome of a paternity determination by Puerto Rico courts under local law.

IT IS SO ORDERED.

---

**5.** The Federal statute involved, section 202(d) of the Social Security Act, 42 U.S.C. sec. 402(d), makes a child's rights to survival benefits dependent upon the devolution on intestate personal property in the court of the state in which decedent was domiciled. *Rivera v. Celebrezze*, 248 F.Supp. at 811.